JOURNAL ENTRY and OPINION
{¶ 1} Defendant Jimmy Ray Thompson, Jr. (appellant) appeals from the following: 1) his sentence to life in prison; 2) the court's objection to his early release from prison; 3) the indictment against him as being unconstitutional; and 4) his arrest, the search of his vehicle, and the search of his residence. After reviewing the facts of the case and pertinent law, we affirm appellant's convictions, vacate his sentence, and remand to the lower court for the limited purpose of resentencing.
 I. {¶ 2} This case involves a multitude of disturbing evidence. An attempt has been made to shelter the facts when at all possible. However, because of the arguments appellant makes in his brief, specifically regarding the legality of his arrest and the search of his property, we find it necessary to both discuss and review some of the details of appellant's offenses.
 {¶ 3} On July 31, 2004, an Olmsted Falls police officer arrested appellant for operating a vehicle while intoxicated (OVI) after appellant backed his pickup truck into another vehicle. Before the police towed and impounded appellant's truck incidental to his arrest, another police officer took a routine inventory of the vehicle's contents. Police also searched appellant in connection with this arrest. The items found on appellant and in his truck included graphic child pornography, which, according to police, was homemade rather than commercial in nature. Also among the items confiscated from appellant's truck were a baggie of sugared cereal; two empty condom boxes; a Barbie Wish List magazine; crayons and stickers; one pair of girl's underwear; and letters written by young children.
 {¶ 4} The pornographic images, as well as the sex and child related items, served as the basis for the police obtaining a search warrant for appellant's home. The warrant led to the discovery of thousands of obscene images of children, including videotapes and pictures of appellant engaged in vaginal and anal intercourse with at least one girl under the age of ten.
 {¶ 5} On October 6, 2004, appellant was indicted for 47 felony counts as follows: 7 counts of rape by force of a child less than 10 years old in violation of R.C. 2907.02; 8 counts of gross sexual imposition in violation of R.C. 2907.05; 9 counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322; 5 counts of kidnapping with a specification of sexual motivation in violation of R.C. 2905.01 and 2941.147; 17 counts of illegal use of minor in nudity-oriented material or performance in violation of R.C. 2907.323; and 1 count of possessing criminal tools in violation of R.C. 2923.24.
 {¶ 6} Appellant filed a motion to suppress the evidence, which the court denied on February 3, 2005. On March 8, 2005, appellant entered a no contest plea, and the court found him guilty of all 47 counts. On April 21, 2005, the court sentenced appellant to the following: life in prison for rape; 15 months for gross sexual imposition; 6 years for second-degree felony pandering; 9 years for kidnapping; 6 years for illegal use of a minor; 15 months for fourth-degree felony pandering; and 10 months for possessing criminal tools. The court ordered both 6-year terms to be served consecutive to the life-in-prison term. All other terms were to run concurrently with one another. Appellant's aggregate sentence is life plus 12 years.
 II. {¶ 7} In his first assignment of error, appellant argues that his "more than minimum and consecutive sentences violate Blakelyv. Washington (2004), 542 U.S. 296, R.C. 2929.14 and is [sic] otherwise contrary to law." Specifically, appellant argues that he has no prior felony convictions and has never served a prison sentence; therefore, a statutory presumption exists that he receive the minimum sentence in the instant case. Appellant was sentenced to life in prison for rape by force of a child less than ten years old, which is the minimum sentence for an offense of this magnitude. However, he was sentenced to more than the minimum on all other counts, and two 6-year terms are to run consecutive to his life sentence. Appellant argues that Ohio's felony sentencing scheme, which requires judicial fact finding to overcome the presumption of minimum and/or concurrent sentences, is unconstitutional. We agree based on the Ohio Supreme Court's recent decision in State v. Foster, ___ Ohio St.3d ___,2006-Ohio-856.
 {¶ 8} In Foster, the Ohio Supreme Court found that several provisions of S.B. 2 violate Blakely. Specifically, the court held:
"Ohio's sentencing statutes offend the constitutionalprinciples announced in Blakely in four areas. As wasreaffirmed by the Supreme Court in Booker, `Any fact (otherthan a prior conviction) which is necessary to support a sentenceexceeding the maximum authorized by the facts established by aplea of guilty or a jury verdict must be admitted by thedefendant or proved to a jury beyond a reasonable doubt.'"
 Foster, supra, at ¶ 82 (citing United States v. Booker
(2005), 543 U.S. 220, 224).
 {¶ 9} The Foster court severed R.C. 2929.14(B),2929.19(B)(2) and 2929.14(E)(4), which govern more than the minimum and consecutive sentences, and rendered them unconstitutional. As a result, the trial court is no longer obligated to follow these guidelines when sentencing a felony offender. "Where sentencing is left to the unguided discretion of the judge, there is no judicial impingement upon the traditional role of the jury." Foster, supra, at ¶ 90.
 {¶ 10} Accordingly, we sustain this assignment of error, vacate appellant's sentence and remand for a new sentencing hearing. We note that the court may want to keep in mind the Ohio Supreme
Court's holding in State v. Mathis, ___ Ohio St.3d ___,2006-Ohio-855, at ¶ 38:
"Although after Foster, the trial court is no longercompelled to make findings and give reasons at the sentencinghearing, * * * nevertheless, in exercising its discretion thecourt must carefully consider the statutes that apply to everyfelony case. Those include R.C. 2929.11, which specifies thepurpose of sentencing, and R.C. 2929.12, which provides guidancein considering the factors relating to the seriousness of theoffense and recidivism of the offender. In addition, thesentencing court must be guided by the statutes that are specificto the case itself."
 III. {¶ 11} In his second assignment of error, appellant argues that "the trial court's ongoing objection to any consideration by the Ohio Adult Parole Authority or Parole Board to any reduction in sentence or early release or other programs which would allow the appellant to be released into the community is not authorized by law, is a violation of due process and equal protection under the Fourteenth Amendment of the U.S. Constitution and increases the legislated maximum penalty to one of life without parole. The trial court's order also violates the separation of powers as provided in [the] U.S. and Ohio Constitutions." Specifically, appellant argues that the court's objection to his early release from imprisonment was included in the sentencing journal entry but was not announced as part of his sentence at any time in open court. He further argues that this acts to lengthen his sentence, from life to life without parole, and by doing this, the court is usurping the powers of the Ohio Parole Board.
 {¶ 12} We address this assignment of error in light of the fact that appellant will be resentenced under the mandates ofFoster. Pursuant to R.C. 2967.28, it is the parole board, and not the courts, that determines if post-release control after completion of a prison sentence is appropriate. However, under Ohio Adm. Code 5120:1-1-107(B), the parole board shall consider the following when contemplating a prisoner's early release: "(4) any recommendations regarding the inmate's release made at the time of sentencing or at anytime thereafter by the sentencing judge, presiding judge, prosecuting attorney, or defense counsel."
 {¶ 13} In the instant case, the court's April 26, 2005 journal entry reflecting appellant's sentence reads in pertinent part as follows:
"The court by this entry notes an on-going and continuedobjection to any consideartion [sic] by the Ohio Adult ParoleAuthority or Parole Board to any reduction of sentence, earlyrelease or furlough or other programs which would allow thisdefendant to be released into the community as he poses a clearand present danger to all children."
 {¶ 14} We disagree with appellant's argument that this portion of the sentencing journal entry is an "order." Rather, it is an objection, which is akin to a recommendation as found in Ohio Adm. Code 5120, supra. As it is not a binding order, it does not violate appellant's constitutional rights, nor does it violate the doctrine of separation of powers. Appellant's second assignment of error is without merit.
 IV. {¶ 15} In his third assignment of error, appellant argues that "the indictment violated the Fifth, Sixth andFourteenth Amendments of the U.S. Constitution." Specifically, appellant argues that the "allegations contained in the indictment do not specify, with any degree of certainty, the date the offenses took place."
 {¶ 16} The Fourteenth Amendment to the United States Constitution mandates that the state give an accused fair notice of the charges against him to permit adequate preparation of his defense. "This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial." Village of Gates Mills v. Aquino (Feb. 17, 1994), Cuyahoga App. Nos. 64697 and 64698, quoting Koontz v. Glossa
(C.A. 6, 1984), 731 F.2d 365, 369. In Ohio, criminal defendants are prosecuted by indictment, and pursuant to Crim.R. 7(B), for an indictment to be constitutionally adequate, it must contain a statement that the defendant has committed a specified public offense. R.C. 2941.05 adds further guidance:
"Such statement may be made in ordinary and concise languagewithout any technical averments or any allegations not essentialto be proved. It may be in the words of the section of theRevised Code describing the offense or declaring the mattercharged to be a public offense, or in any words sufficient togive the accused notice of the offense of which he is charged."
See, also, Hamling v. United States (1974), 418 U.S. 87
(holding that the second indication of a sufficient indictment is that it enables a defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense").
 {¶ 17} In the instant case, appellant was charged with 47 counts relating to child sex abuse involving at least eight young female victims, spanning from January 1, 1999 to July 31, 2004. Narrower time frames were given for some of the offenses, as related to specific victims. One girl was seen repeatedly in the photographs and videos, and her identity, as well as her date of birth, was revealed in the bill of particulars. The location where some of the offenses took place was also listed in the bill of particulars as being appellant's residence.
 {¶ 18} R.C. 2941.08(C) states that an indictment "is not made invalid * * * [f]or stating the time imperfectly." Additionally, the Ohio Supreme Court has held the following:
"Ordinarily, precise times and dates are not essentialelements of offenses. Thus, the failure to provide dates andtimes in an indictment will not alone provide a basis fordismissal of the charges. A certain degree of inexactitude ofaverments, where they relate to matters other than elements ofthe offense, is not per se impermissible or necessarily fatal toa prosecution."
 State v. Sellards (1985), 17 Ohio St.3d 169, 171. Additionally, the Ohio Supreme Court stated that two things are taken into consideration regarding specific dates in an indictment or a bill of particulars. State v. Lawrinson (1990),49 Ohio St.3d 238, 239. First, whether the state has more detailed information and second, "whether this information is material to the defendant's ability to prepare and present a defense." Id.
 {¶ 19} Of the six different offenses appellant was charged with, the date the act took place is not an essential element. The victims in this case were of tender years, and many, if not all, were girls under the age of ten. The children may have been unable to remember specific dates, particularly when the abuse was ongoing over an extended period of time. See, State v.Mundy (1994), 99 Ohio App.3d 275. Appellant did not dispute any of the charges against him, and he failed to raise at any time an allegation that the state had more specific dates, or that not knowing more specific dates would prejudice him in any way. Appellant maniacally catalogued his ongoing abuse of young girls and was shown photographs depicting these acts found in his truck and in his wallet before the state indicted him. It is obvious that he knew what he was being charged with, and inexact time frames do not render his indictment prejudicial. Compare, Statev. Davis (1975), 44 Ohio App.2d 335, 346 (holding that "where evidence supplied in violation of a constitutional right was merely cumulative, and the other evidence against the accused was overwhelming, * * * the reviewing court could conclude beyond a reasonable doubt that the denial of the accused's constitutional rights was harmless error") (citing Harrington v. California
(1969), 395 U.S. 250). See, also, Chapman v. California (1967),386 U.S. 18.
 {¶ 20} Accordingly, we find that the 47-count indictment against appellant contained sufficient information for him to both mount a defense and bar future prosecution for the same offenses. Appellant's third assignment of error is overruled.
 V. {¶ 21} In his fourth and final assignment of error, appellant argues that his "arrest, the seizure and search of his automobile, the statements taken from him and the search of his residence violates [sic] the Fourth and Fourteenth Amendments of the federal constitution." Specifically, appellant argues that three separate acts[1] violated his rights: his arrest; the search of his vehicle; and issuing the search warrant for his residence. Therefore, the court should have granted his motion to suppress. We will address each argument in order.
Motion to suppress
 {¶ 22} When reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." State v.Burnside, 100 Ohio St.3d 152, 155, 2003-Ohio-5372.
Appellant's arrest
 {¶ 23} Appellant was arrested for OVI pursuant to R.C.4511.19(A)(1)(a), which states in part, "No person shall operate any vehicle * * * if, at the time of operation, * * * [t]he person is under the influence of alcohol * * *." The police have probable cause to arrest an individual "if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Dixon v.Maxwell (1964), 177 Ohio St.2d 20, 21, quoting Henry v.United States (1959), 361 U.S. 98, 102.
 {¶ 24} The standard for an appellate court reviewing an OVI arrest is as follows:
"In determining whether the police had probable cause toarrest an individual for [OVI], we consider whether, at themoment of the arrest, the police had sufficient information,derived from a reasonably trustworthy source of facts andcircumstances, sufficient to cause a prudent person to believethat the suspect was driving under the influence. In making thisdetermination, we will examine the `totality' of facts andcircumstances surrounding the arrest."
 City of Mayfield Heights v. Parker, Cuyahoga App. No. 80974, 2003-Ohio-1502, citing State v. Homan (2000),89 Ohio St.3d 421, 427 (internal citations omitted).
 {¶ 25} Appellant argues that his warrantless arrest was not supported by probable cause for two reasons. First, the conclusion that appellant was intoxicated was not supported by the evidence because no officer saw appellant driving, and appellant did not exhibit enough "clues" to show that he was under the influence. Second, the arresting officer failed to take into consideration that appellant may have been injured in the auto accident when she administered the field sobriety tests.
 {¶ 26} In the instant case, the arresting officer testified that when she arrived at the scene of the accident, she learned that a man jumped on the hood of appellant's pickup truck, and appellant put his truck in reverse to attempt to dislodge the man, crashing into the front end of the vehicle behind him. She also testified that appellant was moody, nervous, fidgety, kept his distance from her, and was pacing back and forth, all clues of intoxication. She handed appellant an accident form and suggested that he use the back of her police cruiser to fill it out. Appellant needed to balance himself on the vehicle with his arm to write. When he looked as if he was having trouble with the form, the officer approached appellant and "noticed a distinct odor of an alcoholic beverage coming from his breath." She also noticed that his eyes were red and glassy. Asked if he had been drinking that day, appellant replied "yes," but he did not remember how much.
 {¶ 27} The officer suspected that appellant was intoxicated and decided to perform field sobriety tests to determine whether to arrest appellant for OVI. Pursuant to R.C. 4511.319(D)(4)(b), it must be shown by clear and convincing evidence that an officer administered field sobriety tests in substantial compliance with the National Highway Traffic Safety Administration (NHTSA) standards. In the instant case, the officer provided testimony regarding her training and certification to administer field sobriety tests. She testified about NHTSA standards for the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand test. She then testified, in great detail, about how she administered the tests in the instant case and how appellant failed all three tests.
 {¶ 28} Accordingly, we find that the arresting officer administered the field sobriety tests in substantial compliance with the applicable standards in appellant's case. In addition, the totality of the circumstances, including the officer's personal observations of appellant, support the officer finding probable cause to arrest appellant for OVI. See City ofStrongsville v. Minnillo, Cuyahoga App. No. 80948, 2003-Ohio-162 (holding that the following indicia showed probable cause to arrest for OVI: a strong odor of alcohol on offender's breath; glassy, bloodshot eyes; angry, violent mood swings; and the presence of beer in the car). See, also, State v. Duncan, Lake App. No. 2004-L-065, 2005-Ohio-7061 (holding that the "totality of the circumstances establish that it was reasonable for [the officer] to conclude that appellant was driving under the influence and these circumstances provided the requisite probable cause," notwithstanding the failure to comply with field sobriety test standards). We find that appellant's arrest was supported by probable cause.
The search of his vehicle
 {¶ 29} The Fourth Amendment to the United States Constitution protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Warrantless searches "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." State v. Welch
(1985), 18 Ohio St.3d 88, 91, quoting Katz v. United States
(1967), 389 U.S. 347, 357. One exception to the rule against warrantless searches is an inventory search of a lawfully impounded vehicle. The Ohio Supreme Court held that "an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." State v. Hathman (1992),65 Ohio St.3d 403, 407. Furthermore, an inventory search cannot be used as a pretext to an investigatory or evidentiary search. See, SouthDakota v. Opperman (1976), 428 U.S. 364.
 {¶ 30} In the instant case, two police officers testified that the policy of the Olmsted Falls Police Department is to impound a vehicle when the driver is arrested for OVI. This policy requires all vehicles to be inventoried before they are towed. Officer Floyd Takacs testified in great detail about how he conducts vehicle inventory searches, starting with the passenger side. Takacs stated that the purpose of the mandatory inventory search is to protect the owner's valuables, if any, found in the vehicle; to protect the police against claims of missing property; and to protect the police against dangerous items concealed in the car.
 {¶ 31} When Takacs searched the center console of appellant's vehicle, he found pornographic pictures of young girls who appeared to be under ten years old. The pictures were sexually suggestive, exposing the girls' pubic regions in some cases. Some of the pictures were laminated and cut around the edges to match the shape of the images. Furthermore, the pictures were taken in a residential setting, rather than a studio, and they looked homemade. After completing the inventory search of the cab of appellant's pickup truck, Takacs recovered the above mentioned photographs, adult pornographic magazines, condoms and an adult pornographic movie. See, State v. Mesa (1998),87 Ohio St.3d 105, 110 (concluding that the center console of a vehicle is "a place for the temporary storage of valuables," and is an area that is normally part of an inventory search) (internal citations omitted).
 {¶ 32} At this point, Takacs suspended his inventory search and had appellant's vehicle towed to the police station. He told the booking officer to keep appellant detained because of the felonious nature of the discovered items. Subsequently, Takacs finished the inventory, searching the bed of appellant's pickup truck. A partial list of items found includes: Crayola stickers; colored pencils; coloring books; two boxes of condoms; a pair of soiled little girl's panties; jars of Vaseline; used condoms with girls' names on them; and additional pornographic photographs.
 {¶ 33} We find that a standardized policy for a vehicle inventory search existed within the Olmsted Falls Police Department. Specifically, that policy provides that officers "inventory the contents of any open, closed, sealed, wrapped or unlocked containers." Takacs testified that he conducted the search of appellant's truck in accordance with that policy. Nothing suggests that the search was conducted as part of an investigation or to obtain incriminating evidence against appellant. See State v. Underwood (Jan. 21, 1993), Cuyahoga App. No. 61701 (holding that it is "within the bounds of an inventory search to look underneath the seats of a vehicle and then investigate further when evidence of contraband is discovered"). Accordingly, we find that the search of appellant's vehicle was proper.
The search warrant for his residence
 {¶ 34} In determining whether there is probable cause to issue a search warrant, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates (1983), 462 U.S. 213,238. A reviewing court must determine that a judge had a substantial basis for concluding that probable cause existed in order to uphold the issuing of a search warrant. See, State v.Love, Cuyahoga App. No. 78850, 2002-Ohio-6.
 {¶ 35} Appellant argues that the affidavit in his case could not have provided probable cause for the following reasons: his name is not listed, there is no description of his vehicle, there is no date of the arrest, and there is nothing to suggest that he has a computer or internet access at his residence. We disagree with appellant's arguments. A careful review of the affidavit shows that on July 31, 2004, it was believed that Jimmy Ray Thompson, Jr. kept, concealed and possessed, at his residence of 26672 Lake of the Falls Boulevard, materials dealing with child pornography. Furthermore, the probable cause section of the affidavit states:
"While investigating a motor vehicle accident, the above wasarrested for OVI. During an inventory search of the vehicle,owned by the above named person, the following items were foundand seized: photographs, obscene in nature, of a minor female,8-10 yrs old, DVD's, CD's and like obscene child photos werefound on the above person in his wallet. He stated he got themfrom the Internet. The photos depict a small female child inobscene poses, and some with graphic nudity, of the vaginal areabeing exposed * * *."
 {¶ 36} In addition, a sampling of the illicit photographs found in appellant's truck was attached to the affidavit.
 {¶ 37} We conclude that there was a nexus between the evidence found in appellant's truck and wallet and the probability that more evidence of this nature would be found at appellant's residence. The officers testified, and we previously noted, that many of the pictures appeared to be homemade. Additionally, appellant identified one of the victims as his niece. Furthermore, if appellant acquired these pictures from the Internet, it is reasonable to believe that he may have procured them from the privacy of his house. As one of the officers noted, these were not the type of pictures you would download from a public place, such as a library or a coffee shop. Accordingly, we find that the warrant was properly issued and the resulting evidence taken from appellant's home was seized legally.
 {¶ 38} In summary of appellant's fourth assignment of error, we conclude that, starting with appellant's arrest for operating a vehicle while intoxicated and ending with the search of appellant's home and the seizure of a vast amount of incriminating evidence, appellant's constitutional right to be free from illegal search and seizure was not violated. In fact, by arresting appellant for OVI, the police set off a chain of events that culminated in putting an end to appellant's distorted and predatorial lifestyle. Appellant's fourth assignment of error is overruled.
 {¶ 39} This matter is affirmed as to the trial court's finding of guilty, appellant's sentence is vacated, and this cause is remanded for resentencing.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Kilbane, J., concur.
[1] Appellant's argument that the statements taken from him violated his rights is as follows in its entirety: "Likewise, the statements from the appellant must also be suppresses [sic] as fruit of the poisonous tree." Because we found that appellant's OVI arrest was lawful, the fruit of the poisonous tree argument fails and will not be addressed.